# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN THE MATTER OF JASON
PALERMO, *as owner of the vessel*
*BETTER TIMES II, a 1999 Sea Ray*
*500 Sundancer, IL 0587KX, in rem,*

      Petitioner,

        v.

LARRY W. SCHAEDEL, as
independent administrator of the
ESTATE OF LANE G. SCHAEDEL,
deceased,

      Respondent.

No. 22-cv-05954

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

This case arises out of state-court litigation over the untimely death of an individual who drowned during a boating excursion in September 2020. Lane Schaedel, one of several individuals aboard the vessel "Better Times II" as it was underway in waters near Chicago, either fell or jumped out of the vessel; by the time his fellow passengers noted Schaedel's absence, Schaedel had perished. Respondent Larry Schaedel, Lane Schaedel's brother, later brought a negligence action against the vessel's owner, Petitioner Jason Palermo, in the Circuit Court of Cook, Illinois. Palermo in turn brought the present admiralty action seeking to limit his liability under the Limitation of Shipowner's Liability Act (the "Limitation Act").

Now before the Court is Respondent's motion to dismiss for lack of subject

matter jurisdiction. (Dkt. 9.) Respondent contends that, because the Limitation Act cannot apply here, the Court lacks jurisdiction over this admiralty claim.

For the reasons provided below, Respondent's state law claim alleges bases of negligence that, if accepted by the state court, would necessarily demonstrate Petitioner's culpability for the events that led to Schaedel's death. As set forth in applicable Seventh Circuit precedent, that fact takes this case out of the ambit of the Limitation Act, as there is no situation in which the Limitation Act could apply. And because the Limitation Act cannot apply, this case must be dismissed: either because the Court lacks jurisdiction, or because Petitioner has failed to state a claim on which relief can be granted. Respondent's motion to dismiss is therefore granted.

## I. BACKGROUND

This case arises out of a boating accident on Lake Michigan in September 2020. Lane G. Schaedel drowned after he either fell or jumped off of Petitioner Jason Palermo's boat. Respondent Larry W. Schaedel, as administrator of Lane Schaedel's estate, sued both Palermo and Wesley Murphy, who operated of the boat during the incident, for damages in an Illinois court under the Illinois Survival and Wrongful Death Acts. (Dkt. 9 at 7–8.) In response, Petitioner filed the present action seeking exoneration from, or limitation of, his liability under the Limitation of Shipowner's Liability Act (Limitation Act)[1], 46 U.S.C. § 30501 *et seq.* Respondent has moved to

---

[1] As Judge Crabb suggested in her dissent from a decision of the Court of Appeals (Judge Crabb was sitting by designation), the Limitation Act may be ill-suited to claims concerning personal pleasure-craft. *See Joyce v. Joyce*, 975 F.2d 379, 387 (7th Cir. 1992) (Crabb, J., dissenting). Congress passed the Limitation Act "to encourage ship-building and to induce capitalists to invest money in this branch of industry," *Norwich Co. v. Wright*, 80 U.S. 104, 121 (1871), and to "level the playing field" of the commercial shipping industry compared to

dismiss the petition for lack of subject-matter jurisdiction.

## A. The Incident

Petitioner is the owner of a boat named Better Times II, which is a motor vessel registered in Illinois. (Dkt. 1 ¶¶ 1–3.) On September 6, 2020, Better Times II was operating in Lake Michigan, in and around Chicago and Hammond, Indiana. Petitioner, Murphy, and Schaedel were onboard with a group of six other people, including Schaedel's fiancée, Melissa Navarro. (*Id.* ¶ 3.)

At some point during the cruise, Schaedel disappeared from the boat. It is not clear whether he jumped from the boat or fell, but the other passengers did not immediately notice Schaedel's absence. When they did, the passengers searched for Schaedel, found him in the water, and attempted rescue procedures. Schaedel, however, was deceased. (*Id.* ¶¶ 12–14.)

## B. Procedural History

On September 6, 2022, Respondent sued Petitioner and Murphy in the Circuit Court of Cook County seeking damages for Schaedel's death. In that state case, Respondent alleges that both Petitioner and Murphy were negligent and that their negligence caused Schaedel's death. Respondent bases his allegations of Petitioner's negligence on several grounds, including permitting the boat to operate in dangerous conditions, negligent entrustment, failure to provide sufficient safety devices to the

---

European countries with similar limitation statutes. *Joyce*, 975 F.2d at 383–84 (citing *New Jersey Steam Navigation Co. v. Merchant's Bank*, 47 U.S. 344 (1848). Those justifications are not apparent in this case, which does not concern commercial shipping. But for purposes of this decision, the Court assumes that the Limitation Act applies to claims involving personal pleasure craft.

passengers, and failure to provide reasonable rescue care. (*Id.* ¶ 19; Dkt. 9-1 ¶¶ 17–26.)

On October 28, 2022, Petitioner filed this action seeking protection under the Limitation Act. Petitioner seeks exoneration from liability for claims arising out of the September 6, 2020 incident, or, in the alternative, that his liability be limited to the value of his boat, which he estimates to be $165,000. (Dkt. 1 ¶¶ 8, 9, 28.) Respondent has moved to dismiss the case for lack of subject matter jurisdiction, arguing that the Limitation Act does not apply to these circumstances. (Dkt. 9 at 2.)

## II.    LEGAL STANDARD

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction over a case. Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Id.* But the plaintiff bears the burden of proving that the jurisdictional requirements have been met. *Id.*

Conversely, to the extent the question is whether Petitioner has stated a viable claim,[2] each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These

---

[2] See Section III(B) below addressing the Seventh Circuit's analysis in *Joyce* of the jurisdiction-versus-failure to state a claim question.

allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III.    DISCUSSION

### A.    The Limitation Act Does Not Apply to this Case

Of central importance to Respondent's motion to dismiss is whether the Limitation Act gives this Court the power to limit Petitioner's liability for the negligent acts that Respondent alleges Petitioner committed. Under the circumstances presented by this dispute, the Limitation Act does not, for the reasons that follow, provide that authority.

Under the Limitation Act, a shipowner can file an admiralty action in federal court to limit the shipowner's potential liability "to the value of the vessel and pending freight." 46 U.S.C. § 30523(a). Claims subject to limitation under the Limitation Act include those involving "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). "Privity" means "some personal participation of the owner in the fault or negligence which caused or

contributed to the loss or injury." *Coryell v. Phipps*, 317 U.S. 406, 411 (1942). And "knowledge" means "knew or had reason to know." *Joyce*, 975 F.2d at 386.

In effect, the Limitation Act protects "innocent shipowners and investors who were sued for damages caused through no fault or neglect of their own." *Great Lakes Dredge & Dock Co. v. City of Chicago*, 3 F.3d 225, 231 (7th Cir. 1993). Shipowners remain liable for their own direct fault or negligence. *See Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933).

Respondent argues that this case is most analogous to *Joyce*. In *Joyce*, a 1992 decision of the Seventh Circuit, an injured pleasure boat passenger sued the boat's owner for negligently entrusting the boat to another individual who was recklessly driving the boat when the passenger was seriously injured. 975 F.2d at 381. The owner later petitioned the federal court to limit the owner's liability under the Limitation Act. *Id.* But the district court dismissed the case for lack of subject matter jurisdiction and explained that the passenger's allegations relating to the tort of negligent entrustment made it impossible for the Limitation Act to apply. *Id.* at 382. In affirming, the Seventh Circuit concluded that if a shipowner "knows enough to be liable for negligent entrustment, he knows too much to be eligible for limited liability under the [Limitation] Act." *Id.* at 385. Dismissal of the case was therefore warranted because under either possible scenario—no negligence (so no liability to limit), or negligence with knowledge—the Limitation Act could not apply. *Id.*

Petitioner disagrees that *Joyce* controls and instead argues that this case is more analogous to *In re Kothe*, 2017 WL 4535962 (N.D. Ill. 2017). In *Kothe*, sailboat

6

owner and Limitation Act petitioner Patricia Kothe entered into a boat ownership time-share agreement with Daniel Brown. *Id.* at *8. On the day in question, Brown, Kothe, and others sailed the boat during rough weather; while Kothe was at the helm, Brown fell through an allegedly poorly maintained lifeline at the ship's bow and into the lake. *Id.* at *9. Kothe attempted to rescue Brown, but Brown died from drowning. *Id.* at *9–10. Brown's estate brought a wrongful death action in state court, alleging "numerous negligent omissions, some pertaining to [Kothe's] long-term maintenance of the boat, others pertaining to the pre-departure investigation on the day of the incident, and others related to [Kothe's] actions once Brown fell in the water." *Id.* at *20.

Kothe filed a limitation of liability claim in federal court. Given that Kothe shared ownership with others and the record was unclear as to who bore certain maintenance responsibilities, the court held that the petitioner's privity or knowledge of the alleged negligence was not "clearly an undisputed issue" such that "limitation [would be] impossible for Petitioner [Kothe]." *Id.* at *19–20. As a result, the *Kothe* court denied the estate's motion for summary judgment. *Id.* at *19.

With due respect to Petitioner's argument, *Joyce* controls over *Kothe*. Respondent's substantive allegations establish that the alleged negligence that caused Schaedel's death could not have occurred—if it even occurred at all—without Petitioner's privity or knowledge. This fact alone distinguishes this case from *Kothe*, where a fact-finder could have found that the negligence alleged, including improper long-term maintenance, might have occurred without Kothe's privity or knowledge.

In *Joyce*, the Seventh Circuit conducted its Limitation Act analysis by first looking to the character of the state law doctrines under which liability could be found. 975 F.2d at 385. More specifically, the Seventh Circuit analyzed the tort of negligent entrustment to determine whether that form of negligence could have occurred without the shipowner's privity or knowledge. *Id. Joyce* concluded that negligent entrustment, by its own doctrinal definition, could not occur without the shipowner's knowledge. *Id.* As a result, either the alleged injury was not a result of negligent entrustment and therefore there would be no liability to limit, or it was a result of negligent entrustment of which the owner must have, by definition, had knowledge. *Id.* Because the Limitation Act could not apply in any way, the Seventh Circuit held that the district court was correct in dismissing the case for want of jurisdiction. *Id.*

Petitioner argues that the precedential value of *Joyce* is limited to Respondent's allegation of negligent entrustment. Not so. Negligent entrustment was simply the specific allegation of negligence that the Seventh Circuit in *Joyce* had before it; *Joyce*'s analysis of how claims of negligence fall into (or out of) Limitation Act coverage predominated. It is that analysis that applies here.

Applying *Joyce* to this case requires dismissal. Respondent alleges that Petitioner was negligent in that Petitioner:

> a. Permitted the Better Times II to operate in dangerous weather conditions;
>
> b. Permitted the Better Times II to leave the Hammond Marina pier in dangerous weather conditions;

    c.   Entrusted the operation of the Better Times II to an operator who lacked sufficient experience;

    d.   Entrusted the operation of the Better Times II to an operator who lacked sufficient training;

    e.   Failed to have safety devices for all passengers;

    f.   Failed to train the operator of the boat;

    g.   Failed to supervise the operation of the Better Times II; and/or

    h.   Failed to procure rescue care for [Schaedel] after he fell off the Better Times II.

(Dkt. 9 at 7–8.)

Each of these predicates is directed to Petitioner's own conduct. Petitioner either did or did not permit the Better Times II to operate in dangerous weather conditions. If he did not, there is no negligence and therefore no liability for this Court to limit. If he did, he must have done so with privity or knowledge: "permit[ing]" by definition requires personal participation. As with the tort of negligent entrustment at issue in *Joyce*, there is no scenario under which the Limitation Act could apply. It would have been impossible for Petitioner to have permitted operation in dangerous weather without knowing he was doing so or personally participating in the permission.

Respondent's allegation that Petitioner negligently permitted the Better Times II to operate in dangerous weather conditions, therefore, cannot sustain an action for Limitation Act protection; neither can Respondent's allegation that Petitioner permitted the boat to leave the Hammond Marina pier in dangerous weather conditions. Respondent's allegations that Petitioner was negligent in entrusting the operation of the boat to an operator lacking sufficient experience and training sound

in negligent entrustment and fall under *Joyce*. Respondent's allegation that Petitioner was negligent in failing to provide sufficient safety devices is similar to the allegation of permitting the boat to leave in bad weather, in that either Petitioner did not fail to provide sufficient safety devices, and so liability for Schaedel's death could not arise from this basis, or he did fail to provide safety devices—negligence of which he should have known as owner and passenger on the boat—and the Limitation Act would not apply. Respondent's allegation that Petitioner was negligent in failing to procure rescue care similarly does not allow protection under the Limitation Act.[3]

Respondent's allegations of Petitioner's failure to train or supervise the operator of the boat cannot implicate the Limitation Act because those doctrines also require privity or knowledge. In negligent training and supervision claims, the plaintiff "must prove that the employer was itself negligent. The plaintiff must prove the existence of a duty on the part of the employer to the injured party, a breach of that duty, and an injury proximately caused by the breach." *Nat'l R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 13 N.E.3d 834, 839–40 (Ill. App. Ct. 2014) (cleaned up). Analysis of breach in either of these claims would require an analysis of the personal participation—*i.e.*, privity—of the Petitioner: questioning the sufficiency of Petitioner's training and supervision of Murphy requires a review of Petitioner's

---

[3] *Kothe* recognized that the Fifth Circuit—and perhaps even the Seventh Circuit in *Joyce*—established that " 'when an owner is in control of and operating his pleasure craft he has privity or knowledge with respect to its operation.' " *Kothe*, U.S. Dist. LEXIS 168239, at *17 (quoting *Fecht v. Makowski*, 406 F.2d 721, 722 (5th Cir. 1969). But because *Kothe* dealt with allegations of negligence off the boat and at an earlier time, it declined to extend *Fecht* to cover all negligence, regardless of time or place, so long as the owner was onboard at the time of the incident. There is no such distinction here. Each allegation of negligence is bounded by time and location to the incident leading to Schaedel's unfortunate death.

acts taken as part of that training and supervision. Either Petitioner met the standard of care and thus did not cause any compensable harm, or Petitioner breached by failing to adequately train or supervise; either outcome precludes application of the Limitation Act.

In short, Respondent's state-law complaint alleges bases of *direct* negligence—negligence that cannot have occurred without Petitioner's privity or knowledge. Petitioner himself acknowledges that "the [Respondent's state law] claims against [Petitioner] include multiple claims of direct negligence." (Dkt. 17 at 3.) And "[f]or his own fault, neglect and contracts the owner remains liable." *Brassert*, 289 U.S. at 264. As a result, the Limitation Act cannot apply in this case.

### B. Dismissal based on lack of Subject Matter Jurisdiction

Jurisdiction, as the Supreme Court has observed, is a word of many meanings. *See Wilkins v. United States*, 143 S. Ct. 870, 877 (2023) (warning federal courts about misusing the term "jurisdictional" to refer to "nonjurisdictional prescriptions"). For an issue to be jurisdictional, it must be within the realm of requirements that a plaintiff must complete or exhaust before filing suit. Otherwise, the claim falls within the category of non-jurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring the parties to take certain procedural steps at certain specified times. *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019). To help delineate this jurisdictional boundary, the Supreme Court has instructed the federal courts to treat a procedural requirement as jurisdictional only if Congress clearly states that it is. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006).

Respondent's motion to dismiss for lack of jurisdiction assumes that the Limitation Act's protection is jurisdictional. But the statute itself does not clearly state that it is meant to be a jurisdictional threshold. In considering subject matter jurisdiction, *Joyce* did not proceed by explicitly referring to the text of the Limitation Act. *Joyce* instead merely explained why the Limitation Act could not apply. That circumstance, the Seventh Circuit explained, was enough to uphold the dismissal.

*Joyce* questioned whether inapplicability of the Limitation Act should be characterized as a jurisdictional defect. 975 F.2d at 383 n.3. But it nevertheless upheld the dismissal because the district court held that "the claim asserted here . . . is so insubstantial on its face as to warrant a dismissal on the ground of lack of jurisdiction." *Id.* (citing cases holding that complaints without merit may be dismissed on jurisdictional grounds). And "even if the district court was wrong in characterizing its action as a dismissal for want of jurisdiction . . . [,] we nevertheless would sustain its disposition of the case" because " 'even after [any] proposed amendment, the complaint as a matter of law fails to state a claim upon which relief can be granted.' " *Id.* at 386 n.7 (quoting *Shockley v. Jones*, 823 F.2d 1068, 1073 (7th Cir. 1987)).

A shipowner "has the ultimate burden of proving lack of privity or knowledge in federal court." *In re McCarthy Bros. Co.*, 83 F.3d 821, 827 (7th Cir. 1996); *see also Coryell*, 317 U.S. at 409; *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1303 (7th Cir. 1992). Petitioner's complaint does not plausibly allege lack of privity or knowledge. Where the shipowner "fails to establish lack of privity or knowledge, the

federal court lacks the power under the Limitation Act to limit his liability, and the federal court must relinquish exclusive jurisdiction and allow the Respondent to proceed in state court." *McCarthy Bros.*, 83 F.3d at 827.

Supreme Court jurisprudence on jurisdiction has evolved post-*Joyce*. But *Joyce* remains the most on-point, precedential case on the issue before the Court, and that decision explains that a court can do nothing more than dismiss the case if the pleadings make clear that the Limitation Act cannot apply. That is the circumstance here. Accordingly, Respondent's motion to dismiss is granted.

## IV.   CONCLUSION

Because the negligence alleged by Respondent in an Illinois court could not have occurred without Petitioner's privity or knowledge, the Limitation Act cannot apply. Respondent's motion to dismiss (Dkt. 9) is therefore granted.[4]

SO ORDERED in No. 22-cv-05954.

Date: September 25, 2023

JOHN F. KNESS
United States District Judge

---

[4] Because this dismissal is based on *Joyce*, which affirmed the dismissal of a Limitation Act suit for lack of subject matter jurisdiction, the present dismissal is without prejudice. *See, e.g., Balle v. Kennedy,* 73 F.4th 545, 560 (7th Cir. 2023).